UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. PEROTTI, | ) | CASE NO. 4:05CV2739 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| JASON MEDLIN, et al., | ) | **INTERIM REPORT AND** |
| | ) | **RECOMMENDATION OF** |
| | ) | **MAGISTRATE JUDGE** |
| Defendants. | ) | |
| | ) | |

Before the undersigned is a motion filed by Defendants Jason Medlin, Robert Tapia, Yohmarie Cajigas, M.D., Corrections Corporation of America, and Bill Andrade, M.D. to dismiss some of Plaintiff John Perotti's (Plaintiff) claims in his complaint. ECF Dkt. #71. Defendant Yohmarie Cajigas, M.D. also filed her own motion to dismiss Plaintiff's state law medical negligence claim against her. ECF Dkt. #14, 71. For the following reasons, the undersigned recommends that the Court GRANT the motions. *Id.*

**A. FACTS AND PROCEDURAL HISTORY**

On September 7, 2005, Plaintiff filed a complaint in the Mahoning County Court of Common Pleas against: Jason Medlin, warden of the Northeast Ohio Correctional Center (NEOCC)(Defendant Medlin); Robert Tapia, assistant warden of the NEOCC (Defendant Tapia); Defendant Yohmarie Cajigas, a physician at the NEOCC (Defendant Cajigas); Janardan Tallam, a physician at St. Elizabeth Health Care Center (Defendant Tallam); John Doe No. 1, a physician's assistant at St. Elizabeth Health Care Center (Defendant Doe 1); Defendant Corrections Corporation

1

of America (Defendant CCA); Bill Andrade, a physician and acting chief medical officer for CCA (Defendant Andrade);  Dan Foche and Jason Place, assistant United States Marshals (Defendant Foche and Defendant Place); L. Maury, a nurse employed at Lakewood Hospital under contract with the Lakewood Police Department (Defendant Maury); and Defendants Frische, Favre, Sacco, Kaucheck, Guzik and John Doe No. 2, detectives for the Lakewood City Police Department (Defendant Lakewood Detectives).  ECF Dkt. #1, Attachment 1.

On November 23, 2005, Defendants Place and Foche removed Plaintiff's complaint to this Court.  ECF Dkt. #3.  On January 5, 2006, Plaintiff filed a document to correct his complaint to replace the surname of Defendant Foche with Stech.  ECF Dkt. #15.  Plaintiff also moved the Court to correct the record to change the name Defendant "Maury", the nurse employed at Lakewood Hospital, to Defendant J. Maroney.  ECF Dkt. #99.  The Court granted that motion and ordered that the United States Marshal's Office serve Defendant Maroney with the complaint and summons as outlined in Plaintiff's motion to correct the record.  *Id.*  However, service upon Defendant Maroney came back unexecuted.  ECF Dkt. #106.

The only count of Plaintiff's complaint that concerns the instant motions is Count V.  ECF Dkt. #1-2 at 9-14.  In Count V, Plaintiff alleges that Defendants Cajigas, Medlin, Tapia, Andrade and CCA acted deliberately indifferent to his serious medical needs, violated the ADA and FRA, and committed negligence, when they refused to provide him with medications for which he had prior  prescriptions, including Ultram, Oxycodone and Diazapan.  ECF Dkt. #1-2 at 10.  He also avers claims of deliberate indifference, cruel and unusual punishment, negligence, and breach of contract against Defendants Andrade and CCA because they overruled Defendant Cajigas' medical Order for his prescriptions without physically examining him.  *Id*.

Plaintiff further describes a June 10, 2005 incident in which a guard ordered him to remove toilet paper covering a vent above the porcelain toilet in his cell.  ECF Dkt. #1-2 at 11.  He claims

2

that the toilet shattered when he stood on it to retrieve the paper and he fell, injuring his left forearm, right palm and left knee, which were "cut open to the bone by the sharp porcelain of the toilet during the fall." *Id.* Plaintiff alleged that Defendant Tallam looked at his wounds when he was at St. Elizabeth Hospital and ordered Defendant John Doe Number 1 to suture them. *Id*. Plaintiff alleges that upon asking for a second opinion after he was denied pain medication before the suturing, he was returned to CCA where he asked that Defendant Cajigas "or anyone" suture him. *Id.* at 12. He avers that he fell to the floor after becoming dizzy and he hit his head. *Id.* He states that he awakened at 2:00 a.m. lying in a puddle of his own blood and no one had checked on him or provided medical care. *Id.*

Plaintiff further alleges that he was placed in an isolation cell for two weeks thereafter without daily bandage drainage or sutures. ECF Dkt. #1-2 at 12. He states that he was then released back into the general population with "gaping wounds", but with the assurance that he would receive daily bandage changes. *Id.* He states that he never received the bandage changes, the wound became infected, and he was denied pain medications and antibiotics. *Id.* He claims that these acts and omissions violated the ADA, FRA, and the "Federal Constitutional and tort law" because of his label as a "jailhouse lawyer" and because he had Hepatitis Virus B and C (HBV and HCV) *Id.*

Plaintiff also avers that he did not receive testing for HBV or HCV despite full blown symptoms and his request for testing, and Defendants Cajigas and Andrade told him that he would not receive treatment until he was assigned to a permanent prison. He alleges deliberate indifference against Defendants Tapia and CCA because he was placed in a cell with other cellmates when it was known that he had HVB and HVC, as well as previous staph infections. ECF Dkt. #1-2 at 13.

On December 28, 2005, Defendant Cajigas filed a motion to dismiss Plaintiff's state law medical negligence claims against her because Plaintiff failed to comply with Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure. ECF Dkt. #14. On August 7, 2008, Defendants Medlin, Tapia,

3

Cajigas, CCA and Andrade filed a motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims pursuant to the ADA, FRA and Ohio medical negligence law. ECF Dkt. #71.

Surprisingly, Plaintiff has not filed a response to either of these motions. He has filed two motions to stay proceedings pending discovery, but he discusses a stay only in order to obtain discovery to defend against summary judgment motions filed by these and other Defendants. ECF Dkt. #s 81, 93, 96. Accordingly, Plaintiff has filed no responses to the motions to dismiss filed by Defendants Cajigas and Medlin, Tapia, CCA and Andrade.

### B. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to avoid dismissal for failure to state a claim for relief, the plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, the complaint must give the defendant notice of the claim and the basis for the claim. *Erickson v. Pardus*, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

In reviewing a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and must construe inferences in a light most favorable to the plaintiff. *Erickson v. Pardus,* 126 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court must "determine whether the plaintiff can prove a set of facts in support of his claims that would entitle him to relief.*" Daubenmire v. City of Columbus*, 507 F.3d 383, 387-388 (6th Cir. 2007)(quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)). In order to survive dismissal under Rule 12(b)(6), a plaintiff's complaint "must contain either direct or inferential allegations which comprise all of the essential, material elements necessary to sustain a claim for relief under some viable legal theory." *Cox v.*

4

*True North Energy, LLC*., 524 F.Supp.2d 927, 933-934 (N.D. Ohio 2007).

Despite current uncertainty over the standard of review to apply with regard to evaluating a motion to dismiss for failure to state a claim,[1] the undersigned nevertheless recommends that the Court GRANT Defendants' motions to dismiss Plaintiff's ADA, FRA and state law medical negligence claims because Plaintiff cannot meet the statutory elements of his claims.

## C. ADA AND FRA CLAIMS

### 1. ARA AND FRA INDIVIDUAL CAPACITY CLAIMS

In their motion to dismiss, Defendants Medlin, Tapia, Cajigas and Andrade assert that

---

[1] In *Twombly*, the United States Supreme Court addressed the standard for reviewing a motion to dismiss complaints filed under Section 1 of the Sherman Antitrust Act and explained that once a plaintiff states his claim adequately, he can support it by "showing any set of facts consistent with the allegations in the complaint." 127 S.Ct. at 1969. The *Twombly* Court discussed the standard of review used by the courts based upon its language in *Conley v. Gibson,* 355 U.S. 41 (1957), which stated that "a complaint should not dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that which would entitle him to relief." *Conley*, 355 U.S. at 45-46. The *Twombly* Court noted that this passage "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 1969. The Court clarified that "*Conley*...described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*.

In reviewing the complaint in its case, the *Twombly* Court explained that "a plaintiff's obligation to provide the grounds of his entitlement for relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-1965. The Supreme Court found that the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).

As noted by the Honorable Judge Polster in *Cox v. True North Energy, LLC*., application of the *Twombly* case on the applicable standard of review of Rule 12(b)(6) cases in the Sixth Circuit is as of yet unclear. 524 F.Supp.2d at 934, fn.2. The Sixth Circuit has stated the uncertainty of the scope of *Twombly* beyond antitrust cases (*Weisbarth v. Geauga Park Dist*., 499 F.3d 538, 541 (6th Cir. 2007)), and noted that the *Twombly* Court disavowed the *Conley* passage but used internally inconsistent approaches in determining the motion to dismiss in its case (*Ass'n of Cleveland Firefighters v. City of Cleveland,* 502 F.3d 545, 548, 550, 553 (6th Cir. 2007)). Judge Polster also noted the Sixth Circuit's "nary a mention" of *Twombly* in its two most recent cases. *Cox*, 524 F.Supp.2d at 934, fn.2, citing *Dunbay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007)(quoting and citing *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004); *Daubenmire v. Columbus*, 507 F.3d 383, 387 (6th Cir. 2007)(quotation and citation omitted).

Plaintiff cannot sue them in their individual capacities for alleged violations under the ADA or the FRA because neither statute creates a private right of action against individual employees. ECF Dkt. #71 at 5.

The undersigned recommends that the Court GRANT Defendants Medlin, Tapia, Cajigas and Andrade's motion to dismiss Plaintiff's ADA and FRA claims against them as individuals. ECF Dkt. #71. The Sixth Circuit has held that individual employees may not be held liable under the ADA because the statute prohibits "public entities" from discriminating against disabled individuals. *Williams v. McLemore*, No. 05-2678, 247 Fed. Appx. 1, 2007 WL 1748146 at **6 (June 19, 2007), citing *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 808, n. 1 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-405 n. 6 (6th Cir. 1997). In addition, the Sixth Circuit has held that "individuals who are not employers under Title VII cannot be held personally liable for retaliation under the Rehabilitation Act." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). For these reasons, the undersigned recommends that the Court GRANT Defendant Medlin, Tapia, Cajigas and Andrade's motion to dismiss (ECF Dkt. #71) and dismiss with prejudice Plaintiff's ADA and FRA claims against them in their individual capacities.

### 2. **ADA AND FRA OFFICIAL CAPACITY CLAIMS**

Plaintiff also sues these Defendants in their official capacities under the ADA and the FRA, and he sues Defendant CCA as well. Defendants assert that Plaintiff has failed to establish that he is disabled and otherwise fails to identify a disability as required by the statutes. ECF Dkt. #71 at 3-4. Defendants also assert that Plaintiff fails to state a retaliation claim under the ADA and the FRA. *Id.* at 4.

A plaintiff may bring an ADA and FRA lawsuit against a public entity "by naming the entity itself or by suing an agent of an entity in his official capacity." *Moore v. Tanner*, No. 07-CV-10442,

6

2008 WL 3876346, at *6 (E.D. Mich. Aug. 18, 2008), citing *Brandon v. Holt*, 469 U.S. 464, 471-472, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)(official capacity suit is to be treated as lawsuit against the entity so long as entity receives notice and opportunity to respond). *See also Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(official-capacity suits "generally represent only another way of pleading action against entity of which officer is an agent"). Although he has sued Defendant CCA separately, Plaintiff has in essence already included Defendant CCA in these claims because he has sued Defendants Medlin, Tapia, Cajigas and Andrade in their official capacities as they are all employees of Defendant CCA.

The ADA and FRA prohibit public entities, and those that receive federal funding, from discriminating against individuals, based upon a disability, when those entities provide services, programs or activities. 42 U.S.C. § 12132, the relevant ADA statute, provides in relevant part that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entities." 42 U.S.C. § 12132. Section 504 of Title 29, the FRA, provides similarly:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(2) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794(a). Claims brought under both the ADA and FRA may be analyzed together "[b]ecause the ADA sets forth the same remedies, procedures, and rights as" the FRA. *Thompson v. Williamson Cty.*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000), citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995).

7

In order to assert a prima facie ADA or FRA claim, a plaintiff must show that he is "(1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his [] disability." *Moore v. Tanner*, No. 07-CV-10442, 2008 WL 3876346, at *6 (E.D. Mich. Aug. 18, 2008), quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 2008 WL 2596660, at *6 (6th Cir. 2008), citing, *Maddox*, 62 F.3d at 846, n.2. If any of these elements are missing, the plaintiff's claims fails as a matter of law. *Moore*, 2008 WL 3876346, at *6, citing *Owens v. O'Dea*, No. 97-5517, 1998 WL 344063 (6th Cir. May 27, 1998), unpublished, and *Sandison v. Mich. High Sch. Athletic Ass'n., Inc.*, 64 F.3d 1026 (6th Cir. 1995).

Defendants assert that Plaintiff cannot establish the first element under the ADA/FRA because he fails to identify or show that he has a disability. Section 12102(2) of Title 42 defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. §12101(2). Section 705(20)(B) of Title 29 of the United States Code provides essentially the same definition of "disability" under the FRA. See 29 U.S.C. § 705(20)(B). "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. § 1630.2(i). In order to be considered "substantially limited" in performing a major life activity, "an individual must have an impairment that prevents or severely restricts that individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must

also be permanent or long term." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002), citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)(2001).

In this case, Plaintiff makes no assertion in his complaint that he had a disability as defined by the ADA and/or the FRA and he fails to identify any disability, much less one that substantially limits a major life activity. Plaintiff notes in paragraph 27 of his complaint that he "had prescriptions for numerous medications, including Ultram, Oxycodone, and Diazapan." ECF Dkt. #1-2 at 10. He further states in paragraph 28 that he has been "on these medications for 20 years, in and out of prison, all ordered by pain clinics, neurologists, orthopedic surgeons, and other specialists". *Id*. at 11. He further states in paragraph 34 that he was maintained in an isolation cell without daily bandage drainages, not sutured and released into the general prison population with "gaping wounds". *Id*. at 12. He also states in paragraph 36 that he received no HBV or HCV testing despite "full blown symptoms", and inmates were placed into his cell by Defendant Tapia and CCA when they knew he has HBV, HCV and had prior staph infections. *Id.* at 12-13. Nowhere within these allegations is an identification of a disability or one that meets the requirements of the ADA/FRA. Since Plaintiff fails to show that he is disabled within the meaning of the ADA/FRA, the undersigned recommends that the Court GRANT the motion to dismiss and dismiss with prejudice these official capacity claims filed by Plaintiff against Defendant CCA, thereby also dismissing these claims against Defendants Medlin, Tapia, Cajigas, and Andrade in their official capacities. ECF Dkt. #71.

### D. **OHIO MEDICAL MALPRACTICE CLAIMS AGAINST DEFENDANTS CAJIGAS, ANDRADE AND CCA**

Defendants Cajigas, Andrade, and CCA also move the Court to dismiss Plaintiff's Ohio medical negligence claims against them, asserting that Plaintiff has failed to properly invoke this Court's subject matter jurisdiction for his claims. ECF Dkt. #71 at 6. In his complaint, Plaintiff

alleged that Defendant Cajigas is a doctor at CCA who is responsible for medical care for all of the prisoners therein. *Id*. at 3. He further avers that Defendant Andrade is a doctor and chief medical officer for CCA, who oversees medical policy and procedures for CCA from Tennessee headquarters. *Id*. He avers that Defendant CCA is the employer of both of these Defendants.

Plaintiff claims that Defendant Cajigas prescribed medications for him, but Defendants Andrade and CCA overruled her prescriptions despite never examining him. ECF Dkt. #1-2 at 11. He further avers that Defendant Cajigas failed to suture him after he returned from St. Elizabeth Hospital without stitches after asking them for a second opinion when he was refused pain medication or anesthetic with the suturing. *Id*. at 11-12. He further alleges that no one, including Defendant Cajigas, helped him after he became dizzy from losing blood and fell onto the floor, hitting his head. *Id*. at 12. He claims that he laid on the floor in a puddle of his own blood without anyone checking on or helping him. *Id*. He further alleges that Defendants Cajigas, Andrade and CCA failed to daily drain his wounds or change his bandages, failed to suture the wounds, and released him into the general population with these wounds. *Id.* He also avers that he was denied medications when the wounds became infected. *Id*. Finally, Plaintiff alleges that Defendants Cajigas and Andrade did not perform HBV or HCV testing, even though he had full blown symptoms and requested them. *Id*. He states that they told him that he would not receive any treatment until he was assigned a permanent prison. *Id.*

Defendants Cajigas, Andrade and CCA move to dismiss Plaintiff's medical claims against them, asserting that Plaintiff has failed to invoke this Court's jurisdiction because he failed to comply with the pleading requirements of Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure. ECF Dkt. #71 at 7. Defendant Cajigas had earlier filed her own separate motion on this same claim, for the same reasons argued in the most recent motion by Defendants Cajigas, Andrade and CCA.

10

ECF Dkt. #14.

For the following reasons, the undersigned recommends that the Court GRANT the motions to dismiss filed by Defendant Cajigas, Andrade and CCA. ECF Dkt. #14, 71.

The undersigned notes that this Court has pendent jurisdiction over the claims for which these Defendants seek dismissal. Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure provides that a plaintiff who files a medical claim must include with his complaint an affidavit of merit relative to each defendant "for whom expert testimony is necessary to establish liability." Ohio R. Civ. P. 10(D)(2)(a). The Rule further outlines the requirements of the affidavit, including the statements that must be contained therein and the expert witness who must provide the affidavit. *Id.* The Federal Rules of Civil Procedure do not require such an affidavit of merit.

In determining whether to apply Ohio law or federal law to the instant claims, the undersigned must follow the doctrine enunciated by the United States Supreme Court in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that federal courts must apply state substantive law and federal procedural law when sitting in diversity cases or in pendent jurisdiction cases. The Supreme Court has held that the *Erie* principles apply to state law claims in the same manner in pendent jurisdiction cases as they do in diversity jurisdiction cases. *Felder v. Casey*, 487 U.S. 131, 151, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123, 146 (1988). Under *Erie,* if Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure is considered substantive law, Ohio law applies; however, if that Rule is considered procedural, then federal procedural rules apply. In determining whether a rule of law is substantive or procedural, the Supreme Court explained in *Hanna v. Plumer*, that:

> 'The question is not whether that Rule is "deemed a matter of 'procedure' in some sence. The question is * * * does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?'

11

380 U.S. 460, 466, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), quoting *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Thus, the proper test to employ is an outcome-determinative test. That is, the outcome of the litigation with the rule of law would be substantially the same in federal court as it would be in state court. *Id*. This test must be applied with consideration of the two aims of the *Erie* doctrine: the discouragement of forum shopping and the avoidance of equitable administration of the law. *Keeton v. Mansfield Obstetrics & Gynecology Assocs., Inc.*, No. C80-1573A, at *2 (N.D. Ohio Mar. 5, 1981), citing *Hanna*, 380 U.S. at 468.

Defendants Cajigas, Andrade, and CCA assert that Rule 10(D)(2)(a) is substantive and thus Ohio law applies, rendering Plaintiff's state medical claims against them ripe for dismissal for failure to state a claim because he failed to attach the affidavit of merit required by Rule 10(D)(2)(a). ECF Dkt. #14, 71. The undersigned recommends that the Court find that the Rule is indeed substantive and Ohio law thus applies.

Defendants point the undersigned to no case finding that Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure is characterized as substantive or procedural, and the undersigned was unable to locate such a case. However, many federal courts have considered state rules and statutes requiring similar affidavits of merit to be substantive for *Erie* purposes. For example, in *Abdulhay v. Bethlehem Medical Arts, L.P.*, the United States District Court for the Eastern District of Pennsylvania found that a Pennsylvania Rule of Civil Procedure, Rule 1042.3, which required an affidavit of merit to be filed within sixty days after the filing of a complaint in a professional negligence action, was substantive law for *Erie* purposes. No. CIV.A. 03-CV-04347, 2005 WL 2416012 (E.D. Pa. Sept. 28, 2005), unpublished. In finding the rule to be substantive, that court cited numerous cases within its district which had found the same. *Id*., citing *Scaramuzza v. Sciolla*, 345 F.Supp.2d 508 (E.D. Pa.2004); *Velazguez v. UPMC Bedford Memorial Hospital*, 328 F.Supp.2d

12

549 (W.D.Pa.2004), reversed in part on reconsideration, 338 F.Supp.2d 609 (2004); *Rodriguez v. Smith*, No. Civ.A. 03-3675, 2005 U.S. Dist. LEXIS 12237 (E.D. Pa. June 21, 2005); *Hartman v. Low Security Correctional Institution Allenwood*, No. Civ.A. 04-0209, 2005 WL 1259950 (M.D.Pa. May 27, 2005); and *Schwalm v. Allstate Boiler & Construction, Inc.*, No. Civ.A. 04-593, 2005 U.S. Dist. LEXIS 12422 (M.D.Pa. May 17, 2005). The *Abdulhay* Court also cited a case in which the Third Circuit Court of Appeals had found that a New Jersey statute which required the filing of an affidavit in a professional malpractice case was substantive state law. *Abdulhay*, 2005 WL 2416012, at 4, citing *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3rd Cir. 2000).

The *Chamberlain* Court had created a three-part test to determine whether a state law was substantive or procedural for *Erie* purposes. 2005 WL 2416012, at *4. The *Chamberlain* test was based upon United States Supreme Court cases and other cases relating to the *Erie Doctrine*, including *Hanna v. Plumer* and *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed. 953 (1958). The test requires that the court first determine whether "a Federal Rule directly 'collides' with the state law it is being urged to apply." *Chamberlain*, 210 F.3d at 159, quoting *Hanna*, 380 U.S. at 470-474. In order to determine whether such a collision exists, this Court must determine "whether the scope of the Federal Rule is 'sufficiently broad to control the issue before the Court,' *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), 'thereby leaving no room for the operation of [the state] law,' *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4-5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987)." *Chamberlain*, 210 F.3d at 159. If a direct conflict exists, the court must apply the Federal Rule if it is constitutional and within the Rules Enabling Act. *Chamberlain*, 210 F.3d at 159, citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). If no direct conflict exists, the court applies the *Erie* rule in order to decide if the state law should apply.

The second part of the *Chamberlain* test requires the Court to determine if the state law is outcome-determinative and whether failure to apply it would frustrate the twin aims of the *Erie* Rule: the discouragement of forum shopping and the inequitable administration of the law. *Abdulhay*, 2005 WL 2416012, at *5.

The third part of the test requires the Court to consider whether any countervailing federal interests prevent the state law from being applied in federal court. *Abdulhay*, 2005 WL 2416012, at *5, citing *Chamberlain*, 210 F.3d at 159-161.

Since Plaintiff has filed no response challenging that the Ohio Rule is substantive, and the undersigned agrees with the reasoning in both the *Abdulhay* and the *Chamberlain* cases which found that similar affidavit of merit requirements in their states were substantive, the undersigned recommends that the Court find that Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure is substantive under the *Erie* Rule. Accordingly, the undersigned recommends that the Court apply Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure as such.

In applying Rule 10(D)(2)(a) of the Ohio Rules of Civil Procedure to the instant case, Plaintiff did not file an affidavit of merit with his complaint as required by the Rule in order to proceed with his state medical malpractice claims. In Ohio, the proper remedy is to dismiss the complaint without prejudice. *Fletcher v. Univ. Hosps. of Clev.*, - - -N.E.2d- - -, 2008 WL 482448, 2008-Ohio-5379 (2008); *but see Teasdale v. Heck*, 499 F.Supp.2d 967 (S.D. Ohio 2007)[2]. Since Plaintiff failed to comply with this Rule, the undersigned recommends that the Court GRANT

---

[2] In *Teasdale*, 499 F.Supp.2d at 970, the United States District Court for the Southern District of Ohio relied upon the Ohio Court of Appeals' decision in *Fletcher v. University Hospitals of Cleveland*, No. 88573, 2007 WL 1633427 (Ohio App. 8th Dist. June 7, 2007), which was reversed by the Ohio Supreme Court in *Fletcher*, 2008 WL 482448. The undersigned relies upon the Ohio Supreme Court's interpretation of *Fletcher* as the law of the State of Ohio and therefore respectfully disagrees with the analysis in *Teasdale*.

dismissal of Plaintiff's state law medical malpractice claims against Defendants Cajigas, Andrade, and CCA without prejudice.

**E**. **RECOMMENDATIONS AND CONCLUSIONS**

For the foregoing reasons, the undersigned recommends that the Court:

1. GRANT Defendant Medlin, Tapia, Cajigas and Andrade's motion to dismiss (ECF Dkt. #71) and dismiss with prejudice Plaintiff's ADA and FRA claims against them in their individual capacities;

2. GRANT Defendant CCA's motion to dismiss and dismiss with prejudice the ADA and FRA official capacity claims filed by Plaintiff against Defendant Medlin, Tapia, Cajigas, and Andrade in their official capacities (ECF Dkt. #71);

3. GRANT Defendant Cajigas, Andrade, and CCA's motions to dismiss Plaintiff's Ohio medical malpractice claims against them without prejudice (ECF Dkt. #s 14, 71).

Dated: December 16, 2008         */s/ George J. Limbert*
                                 GEORGE J. LIMBERT
                                 UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).